IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
October 25, 2005 Session

## STATE OF TENNESSEE v. ALFONZO THOMAS PECK, ALIAS TOM PECK

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 241695     Rebecca Stern, Judge**

**No. E2005-00342-CCA-R3-CD** - Filed January 30, 2006

A Hamilton County jury convicted the defendant, Alfonzo Thomas Peck, of two counts of aggravated rape (a Class A felony), and the trial court sentenced him as a repeat violent offender to concurrent sentences of life without the possibility of release. On direct appeal, the defendant raises multiple issues for our review, including the sufficiency of the evidence, challenges to the admission of a prior conviction, a limiting instruction, and sentencing. Upon review, we conclude that the trial court erred in allowing the defendant to be cross-examined regarding his prior conviction of aggravated rape. However, given the overwhelming proof of the defendant's guilt notwithstanding the conviction, we further conclude that the error was harmless. Moreover, we find no error in the balance of the issues presented. Therefore, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

John G. McDougal (on appeal) and Melanie R. Snipes (at trial), Chattanooga, Tennessee, for the appellant, Alfonzo T. Peck, Alias Tom Peck.

Paul G. Summers, Attorney General and Reporter; Blind Akrawi, Assistant Attorney General; William H. Cox, III, District Attorney General; and David W. Denny, Assistant District Attorney General, for the appellee, State of Tennessee.

OPINION

Facts and Procedural History

        In the late evening hours of September 14, 2002, the victim, Alisa Husband, was walking to her sister's house after playing cards with friends in the Orchard Knob area of Chattanooga. As she crossed a field adjacent to the Carver Recreation Center, she heard a man she did not know yelling

at her, but she chose to ignore him. The man continued to pursue the victim, eventually catching up to her and knocking her to the ground with an unknown object. The victim struggled to escape and struck the assailant with a pair of pliers she had in her purse. Despite the victim's efforts, the man overtook her, removed her clothing, and proceeded to penetrate her digitally and to rape her both vaginally and anally.

During this time, Shadrick Lowe was driving his car with Steven Thomas, Antonio Thomas, and Nathan Reese as passengers. Believing that a headlight might be out, Lowe stopped the car to check and heard the victim screaming for help. Lowe detached "The Club," an auto anti-theft device, into two pieces and gave them to Antonio and Steven for protection while the group went to investigate. As they drew closer to the victim's voice, the witnesses observed the assailant on top of the unclothed victim as she pleaded for help. The assailant told the witnesses that he and the victim were married and ordered them to leave, but they refused. Lowe then walked back toward the car to call the police and met Kevin McGowan, a young man living nearby who was leaving his house to attend a friend's party. McGowan allowed Lowe to use his cellular phone to call the police as he cautiously joined the rest of the group. When McGowan got to the scene, the man was leaving and the eyewitnesses informed McGowan that the victim had been raped.

The young men helped the victim gather her clothes and, with the victim's permission, McGowan used his digital camera to take photographs of the injuries to her face. Responding officers Dale Anthony Taylor and Chad Rowe inspected and photographed the crime scene, and recovered a pair of eyeglasses, a wrist watch, and wire cutters, all of which were sent to the Tennessee Bureau of Investigation (TBI) lab for fingerprint analysis. Detective Rowe also collected the disk containing McGowan's digital photographs of the victim. Lowe, McGowan, and Antonio and Steven Thomas all described the assailant to police as middle-aged, between 5'5" and 5'6" tall, and balding.

The victim was transported by ambulance to Erlanger Medical Center, where she was treated for a laceration on her nose and then sent to the Sexual Assault Center for an examination by Breezy Finley, a nurse practitioner. The examination revealed multiple lacerations on the victim's body, ecchymosis (hemorrhaging under the skin), a bite mark between the victim's neck and left shoulder, and injuries consistent with forced vaginal and anal penetration. The victim's injuries were categorized as Levels III and IV on a scale from one to five.

Detective Charles Martin sent the following items to the TBI lab for DNA testing: a rape kit performed on the victim; the clothing of both the victim and defendant; and the wrist watch, glasses, and wire cutters found on the scene. The examination failed to indicate the presence of semen or blood for testing on any of the items; therefore, no DNA evidence was obtained. Additionally, fingerprint analysis of the glasses and face of the watch failed to yield any results.

Approximately eighteen hours after the incident occurred, the defendant telephoned the police to report that his glasses, watch, and $47 were stolen after he became too intoxicated to drive and left his car unlocked at approximately 8:00 p.m. the night before.

After determining that the description of the perpetrator matched the defendant, Detective Rowe included him in a computer-generated photographic lineup, which was viewed by the victim and all five witnesses. The victim, Steven Thomas, and Shadrick Lowe all unequivocally identified the defendant out of the lineup within ten days of the incident.

Two days after the incident, Investigators Charles Martin and Bill Phillips advised the defendant of his rights, which he waived, and questioned him. During the interview, the defendant contradicted the information given in the telephone report, stating that he had been working on a truck between 8:00 and 9:00 p.m., when he took his watch and glasses off and placed them in the truck. He further indicated that he left the doors unlocked and when he returned, the items had been taken.

At trial, the defendant recanted both prior statements and testified that he and the victim had consensual intercourse. Specifically, he stated that the victim approached and propositioned him in exchange for rock cocaine. He further stated that he paid an individual twenty dollars for the cocaine; that the victim smoked it; and that they had sexual intercourse near Carver Recreational Center. The defendant testified that the victim then "started hollering for more cocaine," and when he told her he did not have any more money, "she hollered rape." He stated that he gave the false statement to police because he was afraid of his father, who bought his glasses for him. The defendant testified that, in actuality, the victim took his glasses and his watch and refused to return them to him. Finally, he stated that no one other than him and the victim were present at the scene.

On cross-examination, the defendant admitted that he and his twin brother were convicted of aggravated rape perpetrated in the Orchard Knob area in January 1983. He acknowledged that he was convicted of raping the victim while armed with an ice pick and that the previous victim had multiple bite marks on her back. The defendant stated, however, that there was no DNA evidence linking him with the rape and that he filed a petition for post-conviction relief, which had been denied. He also admitted that he lied to the police in his interview regarding the present case. The defendant stated that after he left the scene, he stayed for two hours at a friend's house, and then went home to stay with his mother while his father went to work. He reiterated that no one other than he and the victim were on the scene but acknowledged that he was intoxicated at the time and had consumed "about a case" of alcohol. Finally, the defendant testified that he did not know how the victim was injured and denied having any injuries on his hands at the time of his interview with police. Following the presentation of proof, the defendant was convicted as charged and was sentenced to concurrent terms of life without the possibility of release.

Analysis

I. Sufficiency

The defendant challenges the sufficiency of the evidence to support the convictions. When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of

guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1, 18 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). To the contrary, this court is required to afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003).

The trier of fact, not this court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence. Id. at 581-82. In State v. Grace, our supreme court stated that "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973).

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

Aggravated rape is defined, in pertinent part, as the "unlawful sexual penetration of a victim by the defendant or the defendant by a victim accompanied by any of the following circumstances: . . . The defendant causes bodily injury to the victim." T.C.A. § 39-13-502(a)(2) (2002). Notwithstanding the evidence of the defendant's prior conviction and the lack of DNA evidence linking him to the crime, we conclude that the evidence was sufficient to determine that the intercourse was unlawful and resulted in bodily injury to the victim.

At trial, three eyewitnesses testified that they heard the victim screaming for help and, upon further investigation, found a man on top of the victim, who was unclothed, bleeding, and crying. Although the assailant attempted to persuade the young men to leave the scene, they refused and forced him to flee. Four of the witnesses described the perpetrator as between 5'5" and 5'6", middle-aged, and balding, a description that matched the defendant, who was known to frequent the area. A search of the crime scene yielded a pair of eyeglasses and a watch, both admittedly owned by the defendant. The victim, Shadrick Lowe, and Steven Thomas all unequivocally identified the defendant as the perpetrator from a computer-generated photographic lineup within days of the incident and again at trial. Finally, the record reflects that the victim sustained injuries consistent exclusively with forced vaginal and anal penetration, as well as a laceration across the bridge of her nose that required a two-layer closure. For these reasons, we conclude that the evidence presented was sufficient to convict the defendant.

## II. Cross-Examination on Prior Conviction (Defendant's Issues I and II)

Next, the defendant contends that the trial court erred in allowing the State to cross-examine him regarding his prior conviction for aggravated rape.[1] Tennessee Rule of Evidence 404(b) provides that evidence of other crimes or acts, although not admissible to prove the character of a person in order to show action in conformity with the character trait, may be admissible for other purposes. Prior to allowing such proof, the trial court must conduct a jury-out hearing, must determine whether there is a material issue other than conduct conforming with the character trait, and must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice. Tenn. R. Evid. 404(b); State v. West, 844 S.W.2d 144, 149 (Tenn. 1992).

Generally, Rule 404(b) is one of exclusion, but there are exceptions. State v. Jones, 15 S.W.3d 880, 894 (Tenn. Crim. App. 1999). The generally recognized exceptions to the rule allow evidence offered to prove motive, identity, intent, absence of mistake, opportunity, or a common plan or scheme. Bunch v. State, 605 S.W.2d 227, 229 (Tenn. 1980). Our standard of review of the trial court's determinations under Tennessee Rule of Evidence 404(b) is whether the trial court's ruling was an abuse of discretion. State v. Dubose, 953 S.W.2d 649, 652 (Tenn. 1997).

At the conclusion of the direct examination of the defendant, the State requested a jury-out hearing on the admissibility of the defendant's prior conviction for aggravated rape. After hearing arguments from both parties, the trial court found that both the fact of the conviction and the circumstances of the crime were admissible:

> In light of the fact that [the defendant] has just testified that this was a consensual act for money, I think the prior conviction, the probative value outweighs the prejudicial effect in this case and I will give a limiting instruction that they are not to take it as propensity.
>
> . . . .
>
> . . . I find that the prior bad act or crime he committed goes to his intent and motive in this case and on the issue of consent. I will instruct the jury that they are to consider it for those purposes only.

On appeal, the defendant contends that the conviction was far more prejudicial than probative and amounted to propensity evidence. See Tenn. R. Evid. 404(b). The State counters that the evidence is more probative than prejudicial because the defendant raised the issue of consent on direct examination. The State further avers that if error is present, it is harmless.

---

[1] The defendant additionally contends that the trial court erred in allowing the State to inquire as to the facts of the previous conviction, relying exclusively on State v. Taylor, 993 S.W.2d 33 (Tenn. 1999). However, that case noted that impeachment with convictions under Rule of Evidence 609 is limited only "to the fact of a former conviction and the crime that was committed." Id. at 34. In this case, however, the conviction was admitted pursuant to Rule 404(b), which does not so limit use of the conviction.

We first note that the record is devoid of any indication that the previous conviction bore any relation to the defendant's motive or intent in the present case except to prove conformity therewith. Indeed, it appears that the trial court admitted the prior conviction to discredit the defense of consent by showing that the defendant had committed the same offense previously, a practice that Rule 404 was designed to prevent. We would further note the highly prejudicial nature of the previous conviction, which presented the identical offense with which the defendant was charged:

> When an impeaching conviction is substantially similar to the crime for which the defendant is being tried, there is a danger that jurors will erroneously utilize the impeaching conviction as propensity evidence of guilt and conclude that since the defendant committed a similar offense, he or she is probably guilty of the offense charged. State v. Barnard, 899 S.W.2d 617, 622 (Tenn. Crim. App. 1994); State v. Farmer, 841 S.W.2d 837, 839-40 (Tenn. Crim. App. 1992); Long v. State, 607 S.W.2d 482 (Tenn. Crim. App. 1980). Accordingly, the unfairly prejudicial effect of an impeaching conviction on the substantive issues greatly increases if the impeaching conviction is substantially similar to the crime for which the defendant is being tried. Therefore, trial courts should carefully balance the probative value of the impeaching conviction on credibility against its unfairly prejudicial effect on substantive issues.

State v. Mixon, 983 S.W.2d 661, 674 (Tenn. 1999). In this instance, the prior conviction amounted to propensity evidence and was certainly far more prejudicial than probative. As such, the trial court erred in admitting it.

Nonetheless, in light of the overwhelming evidence of the defendant's guilt, we conclude that the error was harmless. Error based upon an evidentiary rule may not require reversal if it "was more probably than not harmless." State v. Martin, 964 S.W.2d 564, 568 (Tenn. 1998). Moreover, a conviction will not be reversed unless the error "affirmatively appear[s] to have affected the result of the trial on the merits." Tenn. R. Crim. P. 52(a). Therefore, in determining an error's effect on a trial, we are to analyze the error in light of the proof in its entirety. State v. Gilliland, 22 S.W.3d 266, 274 (Tenn. 2000).

In this case, five eyewitnesses came upon the scene and observed the attack, four of which gave a description of the perpetrator that matched the defendant. At trial, the witnesses further testified as to the frightened and distraught demeanor of the victim and the laceration on the victim's face. Two of the witnesses, along with the victim, positively identified the defendant from a photo lineup and at trial. Finally, an examination following the attack reflected that the victim suffered Level III and IV injuries, consistent with forced vaginal and anal penetration. Therefore, because of the overwhelming evidence of the defendant's guilt, which included a positive identification by the victim and two disinterested eyewitnesses, we conclude that the admission of the prior conviction was harmless.

III.  Limiting Instruction

Next, the defendant contends that the limiting instruction given regarding the prior aggravated rape conviction was in error.  A defendant has a right to a correct and complete charge of the law, see State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990), so each issue of fact raised by the evidence will be submitted to the jury on proper instructions, see Poe v. State, 212 Tenn. 413, 416, 370 S.W.2d 488, 489 (Tenn. 1963).  In evaluating claims of error in jury instructions, courts must remember that "'jurors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning'".  State v. Vann, 976 S.W.2d 93, 101 (quoting Boyde v. California, 494 U.S. 370, 380-81, 110 S. Ct. 1190, 1198 (1990)).  Therefore, we review each jury charge to determine if it fairly defined the legal issues involved and did not mislead the jury.  See State v. Hall, 958 S.W.2d 679, 696 (Tenn. 1997).

In this instance, the trial court issued both a spontaneous instruction immediately after the defendant was cross-examined regarding his prior conviction and a more conventional instruction given after the presentation of proof.  The former was stated as follows:

> [Trial Court]: [Y]ou have heard evidence of what we call a prior bad act or prior criminal behavior.  The law does not allow a jury to consider prior bad acts or prior criminal behavior to establish that on this particular occasion the defendant acted in conformity or had a propensity to perform this type of crime.  I know that sounds crazy, to lay people that sounds crazy.
>
> But you are not to consider this for propensity evidence at all.  What you are supposed to consider is whether or not – what I am allowing is for whether or not it goes to other issues in the trial.
>
> One of the issues you have got to determine is what his intent or motive was in this case.  His testimony is that this was a consensual act between himself and the victim.  You are only to consider this testimony as to whether or not it goes to what his intent or motive in committing this crime was.
>
> You are not to take it in terms of, well, if he did that before, he must have done this.  That is not allowed under the law.  You cannot say because somebody did something in the past they necessarily did something else.
>
> This case has to stand alone on itself and the State has to prove their case beyond a reasonable doubt and you cannot say because someone did something before they did it again.  But you can consider it on the limited issue of what on this particular occasion his intent or motive was.  Does that seem clear to everybody?  I will give you further instruction but keep that in mind.

The latter instruction, given at the close of proof, tracked the pertinent language contained in the Tennessee Pattern Jury Instructions.  See T.P.I. - Crim. 42.10 (8th Ed.).

On appeal, the defendant particularly challenges the part of the spontaneous instruction in which the trial court stated that, "You are only to consider this testimony as to whether or not it goes to what his intent or motive in committing this crime was." The defendant contends that this statement was prejudicial, as it insinuated to the jury that he committed the present offenses. We initially note that, while this was certainly a misstatement on the part of the trial court, the trial court went on to state that:

> This case has to stand alone on itself and the State has to prove their case beyond a reasonable doubt and you cannot say because someone did something before they did it again. But you can consider it on the limited issue of what on this particular occasion his intent or motive was.

At the close of proof, the trial court further instructed that, in order to return a verdict of guilt, the State must prove each element of the convicted offense beyond a reasonable doubt. Therefore, we must conclude that the instructions, taken as a whole, fairly defined the State's burden of proof and did not mislead the jury regarding the intended purpose of the prior conviction.

## IV. Blakely v. Washington

The defendant also challenges the sentences imposed in light of the Supreme Court's recent holding in Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004). Blakely required that enhancement factors be either admitted by the defendant or found by a jury determination beyond a reasonable doubt. Blakely, 542 U.S. at 303, 124 S. Ct. at 2538. An exception to this rule is that state law may authorize a trial judge to increase a sentence beyond the maximum based upon "'the fact of a prior conviction.'" Id. at 301 (quoting Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362 (2000)). On appeal, the defendant contends that his sentences were issued in error, as he should have had a jury determination of whether or not he was a repeat offender. However, our supreme court has previously determined that Tennessee's sentencing procedures do not violate the Sixth Amendment right to trial by jury described in Blakely. See State v. Gomez, 163 S.W.3d 632, 661 (Tenn. 2005). Therefore, the sentence was not issued in error.

## V. Cumulative Error

In his final issue, the defendant contends that the cumulative effect of all errors merits a new trial. However, this argument must fail because we have found only one error, which we have concluded was harmless.

## Conclusion

For the foregoing reasons, we affirm the judgments of the Criminal Court of Hamilton County.

_____
JOHN EVERETT WILLIAMS, JUDGE